

# CABOT LODGE SECURITIES

### FINANCIAL ADVISOR INDEPENDENT CONTRACTOR AGREEMENT

This AGREEMENT is made and entered into this  5th  day of  December  2016 by and among:

_Daniel S. Werts_ who resides at:
[NAME]

_3889 Primrose Lane_
[STREET ADDRESS]

_Castle Rock_                                     _CO_             _80109_
[CITY]                                              [STATE]          [ZIP CODE]

(hereinafter "Financial Advisor") and Cabot Lodge Securities, LLC (hereinafter "CLS").

Financial Advisor is entering into this Independent Contractor Agreement to act as a Financial Advisor,

commencing on _December 5_, 20_16_ (the "Effective Date").

WHEREAS, CLS is a private Limited Liability Company organized and in good standing in the State of Delaware, is a member of the Financial Industry Regulatory Authority ("FINRA"), and is registered as a broker/dealer with the Securities and Exchange Commission (the "SEC");

WHEREAS, Financial Advisor has the requisite FINRA, state and federal securities licenses that permit Financial Advisor to solicit purchases and sales of securities to suitable investors and to perform his/her Company duties (a "Licensed Professional"); and

WHEREAS, Financial Advisor desires to become an independent contractor of CLS for the purpose of soliciting and executing securities transactions on behalf of the investment companies with whom CLS has entered into a selling agreements, and on behalf of other issuers whose securities are sold by CLS;

NOW, THEREFORE, in consideration of the mutual covenants set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

**A. INDEPENDENT CONTRACTOR WITH CLS**

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)


ver08-01-12CLS

### I. COMPANY DUTIES

Nothing contained in this Agreement shall be construed to create the relationship of employer and employee between Financial Advisor and CLS.

Financial Advisor enters into this Agreement with CLS to act as a financial advisor for the purpose of soliciting and/or executing securities transactions on behalf of the investment companies with whom CLS has entered into a selling agreement, and on behalf of other issuers whose securities are sold by CLS and in accordance with Section IV herein ("Company Duties").

Financial Advisor shall serve at the reasonable direction of the Branch Manager of the CLS branch to which Financial Advisor is assigned from time to time or from CLS's home office. In consideration for his/her services to CLS, Financial Advisor shall be entitled to the compensation set forth in Section II herein.

Financial Advisor agrees that at all times during Financial Advisor's contract with CLS, Financial Advisor owes CLS a duty of loyalty and a duty to act in good faith. Financial Advisor agrees that during Financial Advisor's contract Financial Advisor will not, individually or in combination with any other employee, independent contractor or competitor of the CLS, violate or breach the terms of this Agreement.

Financial Advisor shall be free to exercise his or her own reasonable judgment as to those persons from whom he or she will solicit applications and orders, the methods of solicitation and the time and place of solicitation, provided, however, that in such activities Financial Advisor shall conform to such supervision of CLS as required by state and federal law, the regulations and rules of the Securities and Exchange Commission and FINRA, and to such policies as may be established by CLS in order to comply with all applicable statutes, rules, and regulations governing the solicitation of applications and orders for the purchase or sale of Securities.

### II. COMPENSATION

Financial Advisor shall be entitled to commissions computed by multiplying: (i) the "Payout Percentage" in the applicable payout matrix of the commission grid set forth in Exhibit "A" (attached hereto and incorporated herein by reference), by: (ii) the proceeds of the gross commissions and 12b-1 fees received by CLS (less any Dealer-Manager Fees or any marketing fees paid to CLS by an issuer of Securities, and less such clearing, postage and related costs as are then charged by CLS for trades) in connection with the sale of Securities and Insurance Products (if applicable) to clients of Financial Advisor in which Financial Advisor was the procuring cause of such sales (the "CLS Gross Commissions").

Payments of Commissions will be computed on a semi-monthly basis, as of the 15th (or previous business day) and the last business day of each month (the "Cutoff Dates"). Provided that CLS is in receipt of the pertinent Commissions earned by Financial Advisor in connection with closed sales giving rise to such commissions by the last day of any month, shall be paid to Financial Advisor five business after each Cutoff Date. Upon termination of this Agreement, Financial Advisor shall only be entitled to payments for compensation earned up to the effective date of termination, which shall be paid as provided herein. Upon termination of this Agreement, Financial Advisor shall only be entitled to payments for compensation earned up to the effective date of termination, which shall be paid as provided herein subject to CLS's right to setoff as contained in this Agreement.

With respect to the Commissions earned by Financial Advisor under this Agreement, Financial Advisor will be solely responsible for the payment of any and all taxes, including specifically but not limited to federal and state income taxes, FICA or self employment taxes, and any similar tax. CLS will not withhold any such taxes from the compensation paid to Financial Advisor. CLS will issue a Form 1099 to Financial Advisor at the end of the year. Financial Advisor agrees to provide CLS with proof of payment of any applicable taxes upon request.

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)


ver06-01-12CLS

### III. APPOINTMENT

Financial Advisor may only solicit and execute securities transactions for products once Financial Advisor holds the requisite FINRA, state and federal securities licenses that permit Financial Advisor to solicit purchases and sales of securities to suitable investors and their portfolios, and Financial Advisor may only solicit and execute securities transactions for products as defined by Financial Advisor's registration with FINRA, state, federal, and other regulatory bodies. Financial Advisor will not solicit or execute securities transactions for products which are not specifically permitted by Financial Advisor's registration as defined by all applicable federal and state securities laws (including the rules and regulations thereunder) and FINRA rules and regulations. Financial Advisor agrees to solicit, sell or accept applications or orders for only those products or services approved in writing by CLS and/or which are approved as being available through CLS's clearing firm. Further, at no time will Financial Advisor solicit or execute transactions for residents of any state in which either CLS or Financial Advisor are not properly licensed.

### B. REPRESENTATIONS AND WARRANTIES

Financial Advisor represents and warrants to CLS that as of the date of this Agreement and as of the Effective Date, except as disclosed in writing by Financial Advisor to CLS in Exhibit "C" attached hereto and incorporated by reference, that:

(i) he/she is not a party to any legal or administrative action instituted or taken against Financial Advisor by any person, organization, regulatory body or court, excepting minor traffic offenses; is not aware of any threatened legal or administrative actions that may be instituted or taken against him/her by any person, organization, regulatory body or court, excepting minor traffic offenses; has no knowledge or awareness of any facts that could cause or support any person, organization, regulatory body or court to institute or take legal or administrative action against him/her, excepting minor traffic offenses;

(ii) he/she has not ever been the subject of a suspension, revocation, consent decree, or other disciplinary action by FINRA or any other regulatory agencies or bodies;

(iii) he/she has never been indicted for or convicted of a misdemeanor or felony other than with respect to a traffic violation;

(iv) he/she is not currently a debtor in bankruptcy;

(v) he/she has not violated any privacy policy of any other broker/dealer with whom Financial Advisor has previously associated;

(vi) he/she is not currently subject to a claim or action, which, if resolved against him/her, would materially negatively affect his/her financial condition;

(vii) he/she is not currently addicted to any illegal drug or substance or any other substance which may impair his/her judgment or impact his/her Company Duties;

(viii) the execution of this Agreement and the performance of Financial Advisor's Company Duties hereunder, does not and will not violate or be a breach of any agreement with a former employer, client or any other person or entity;

(ix) he/she either: (a) currently holds Series 7 and either a Series 63, 65 or 66 licenses issued by FINRA, and that Financial Advisor's licenses are active, in good standing and/or that (ii) he/she knows of no reason why he/she is not properly qualified to seek and be granted Series 7 and 7 and either a Series 63, 65 or 66 licenses issued by FINRA if Financial Advisor does not currently hold

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200 Toll Free: 1-888-99-CABOT (22268)


ver08-01-12CLS

such licenses;

(x) all statements contained in Financial Advisor's application with CLS and any of its affiliates, and Financial Advisor's Uniform Application for Securities Industry Registration (Form U-4), and any other application for registration or licensing in connection with his/her employment or independent contract with any member of the CLS Group are true and accurate;

(xi) he/she shall at all times serve CLS with his/her best efforts, in good faith and with fidelity, and shall at all times serve and promote CLS's business and interests, shall at all times conduct business in accordance with the CLS's WSPs and CLS's rules, directives, policies and directions as are or may come to be in effect; and shall at all times conduct business in full and complete compliance with all laws, rules, regulations, directives and interpretations of CLS's supervisory; and

(xii) he/she has not conducted any business on behalf of CLS, has not solicited or otherwise contacted clients claiming to be associated in any way whatsoever with CLS and has not claimed to have any affiliation with CLS prior to being notified in writing by CLS of CLS's acceptance of this Agreement.

## C. CONFIDENTIAL INFORMATION AND RESTRICTIVE COVENANTS

### I. DEFINITIONS

The following terms used in this Agreement have the following meanings:

"**Account**" means each and every CLS and CLS Group account, customer, client, lead or prospect.

"**Account Documents**" means all documents and records relating to any Account whether original, duplicated, computerized, printed, memorized, handwritten, or in any other form, and all information contained therein, including without limitation the names, addresses, phone numbers, and financial information of any Account. All Account Documents are Confidential Information and are the sole and exclusive property of CLS and, respectively, each of the other persons comprising the CLS Group. Account Documents, whether provided to Financial Advisor by CLS or by any Account, is entrusted to Financial Advisor solely in his/her capacity as an independent contractor of CLS. This information is extremely valuable to CLS and the CLS Group, each of whom takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside the CLS Group and within the CLS Group this information is a Trade Secret and/or Confidential Information and used only on a "Need to Know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired.

"**Affiliate**" or "**affiliate**" means with respect to any Person, his/her or its owners, managers, members, partners, shareholders, officers, directors, and any other Person which is controlling, controlled by, or under common control with (directly or indirectly through any Person) the Person referred to, and, if the Person referred to is a natural person, a Family Member of such Person. The term "control" (including, with correlative meaning, the terms "controlled by" and "under common control with") as used with respect to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"**Confidential Information**" or "**confidential information**" means trade secrets, proprietary information and information belonging to the CLS Group and their Affiliates that are not generally known to the public, including, but not limited to, Accounts, information concerning business plans, financial statements and other information obtained by Financial Advisor in connection with his/her involvement with CLS pursuant to this Agreement,

Page 4 of 20

Cabot Lodge Securities, LLC, Member FINRA, SIPC 
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200   Toll Free: 1-888-99-CABOT (22268)

ver08-01-12CLS

operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists or other business documents which CLS Group treats as confidential, in any format whatsoever, including oral, written, electronic or any other form or medium.

"**CLS Group**" means CLS, CL Wealth Management, Cl General Agency, United Realty Trust Incorporated, United Realty Advisors, L.P. and each of their respective Affiliates.

"**Person**" or "**person**" means any individual, sole proprietorship, partnership, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization, association, corporation, institution or other entity.

"**Trade Secret**" or "**trade secret**" shall have the meaning given in the Delaware enactment of the Uniform Trade Secrets Act, and shall include, without limitation, the whole or any portion or phase of any scientific or technical information, design, process, formula, concept, data organization, manual, other system documentation, or any improvement of any thereof, in any case that is valuable and secret (in the sense that it is not generally known to the CLS Group's competitors.

Certain additional defined terms used in this Agreement have the meanings specified throughout the Agreement.

## II. UNDERTAKINGS

In consideration of CLS compensating Financial Advisor, providing Financial Advisor with with access to sales leads, trade secrets and confidential information, providing Financial Advisor with office facilities and sales support, and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, Financial Advisor hereby covenants to CLS and agrees that:

(i) he/she will not engage in any other employment, occupation, consulting or other business activity, or engage in any other activities which conflict with Financial Advisor's Company Duties hereunder, except that Financial Advisor, may also be employed by United Realty Advisors, L.P.;

(ii) during the term of this Agreement in no event will he/she own an active interest in, or manage, operate or act in a managerial capacity for or on behalf of any company or entity engaged in any business or investment activity other than as set forth herein;

(iii) during the term of this Agreement he/she shall follow such internal conflict policies and procedures (including, without limitation, policies designed to prohibit insider trading) as adopted and amended from time to time by CLS, and will certify as may be requested from time to time by CLS that Financial Advisor is following such policies and procedures;

(iv) from the Effective Date until the date that is twelve (12) months after the date of the termination of Financial Advisor's Agreement with the CLS (whether voluntarily or involuntarily, and whether with or without cause), Financial Advisor will not, without the prior written consent of the CLS, directly or indirectly:

    A. solicit, induce or influence any person which has a business relationship with CLS and the other members of the CLS Group to discontinue or reduce the extent of such relationship in a manner in any way detrimental to the CLS Group,

    B. (i) recruit, solicit or otherwise induce or influence any employee, contractor, consultant or advisor of the CLS Group, to discontinue such person's relationship with the CLS Group or with any asset owned or operated by the CLS Group or (i) hire any such employee, contractor, consultant or advisor,

Page 5 of 20

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)

ver08-01-12CLS

    C. be Affiliated in any way with any company or person, which does any of the things which you are prohibited from doing under Sections (iv) A or (iv) B above,

    D. disparage any person comprising the CLS Group in any communications, whether in writing or orally, in a manner that could reasonably be expected to in any way intended to or which does injure the CLS Group's business or reputation,

    E. divulge to anyone (except as required by law), use, retain copies of or seek to benefit personally from any Confidential Information, Trade Secret or intellectual property of the CLS Group.

    F. claim to have any right, title or interest of any kind or nature whatsoever in or to any products, methods, practices, processes, discoveries, ideas, design, Confidential Information (including, without limitation, and for the avoidance of doubt, CLS's track record and investment performance records), improvements, devices, creations or inventions in each case directly or indirectly relating to or useful in any aspect of the business of the CLS Group, whether created, developed or invented by Financial Advisor, CLS and/or any other person comprising the CLS Group.

(v) he/she shall not directly or indirectly induce or attempt to influence any employee of CLS or the CLS Group to terminate his/her/its relationship with CLS or the CLS Group or terminate any contract with CLS or the CLS Group;

(i) he/she will not use or remove any Account Documents from any CLS office except for the sole purpose of conducting business on behalf of CLS, and Financial Advisor agrees not to use any information in any Account Documents other than for the business of CLS and/or the CLS Group, and will not to divulge or disclose such information to any third party, and under no circumstances will Financial Advisor reveal or permit such information to become known by any competitor of CLS or the CLS Group either during Financial Advisor's tenure with CLS or at any time thereafter. Financial Advisor agrees that Account Documents and the information contained therein are the property of CLS or the respective CLS Group person and are deserving of trade secret status and protection. Financial Advisor further agrees to immediately return all Account Documents and records immediately upon CLS's request or termination of Financial Advisor's involvement with CLS, for any or no reason, including all copies of any Account Documents whether stored on computer files or in paper form, obtained from CLS and/or the CLS Group or any of the Accounts. Such property shall include everything obtained during and as a result of Financial Advisor's involvement with CLS, other than documents related to Financial Advisor's compensation, such as commission pay stubs and statements;

(ii) during the term of this Agreement, Financial Advisor shall keep and maintain all Account Documents as well as all Account records, books, accounts, computer systems, software, databases, files and other such other Account information only and exclusively on CLS's office premises and on computers issued by CLS to Financial Advisor. Financial Advisor acknowledges that CLS may issue computers and software to Financial Advisor for use in connection with its services hereunder, and that all such computers and software (subject to any licensing restrictions with third party software vendors) and all data maintained thereon, shall at all times be the exclusive property of Cabot Lodge, and CLS shall be entitled to demand same back from Financial Advisor on demand, and Financial Advisor hereby covenants and agrees to immediately return all such computers and software and data immediately upon request for same, and shall not maintain any duplications of any Account Documents or other data or programs maintained therein;

(iii) he/she will not solicit by mail, by phone, by personal meeting or by any other means, either directly or indirectly, any Account whom Financial Advisor served or whose name became known to

Page 6 of 20

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)


ver08-01-12CLS

Financial Advisor during or as a result of Financial Advisor's involvement with CLS in any office and in any capacity. This covenant and agreement of Financial Advisor "not to solicit" means Financial Advisor will not, during the term of Financial Advisor's involvement with CLS and for a period of twelve (12) months thereafter, directly or indirectly, in any way, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

   a. to transfer from CLS to Financial Advisor or to Financial Advisor's new broker dealer; or

   b. to open a new account with Financial Advisor or with Financial Advisor's new employer; or

   c. to otherwise discontinue or alter his/her/its business relationship with CLS or CLWM.

The above covenants and constraints shall apply to each and every Account whom Financial Advisor served or whose name became known to Financial Advisor during Financial Advisor's involvement with CLS in any office and in any capacity, including without limitation, by virtue of assignment, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, etc. The above restraints shall NOT apply to: (i) any of the Accounts which Financial Advisor developed prior to the Effective Date, and which Financial Advisor brought with him/her or had transferred to CLS within thirty (30) days after the Effective Date, (ii) any of the accounts which Financial Advisor developed prior to the Effective Date, and which are listed on the "Prior Accounts" list attached hereto as Exhibit D and incorporated herein by reference, and for whom Financial Advisor hereafter opens an Account with CLS; (iii) any accounts opened by Financial Advisor within the first ninety (90) days after the Effective Date which are for persons Financial Advisor knew or was familiar with prior to becoming engaged by CLS, and so identified on the opening account documentation; and (iv) any Account of Financial Advisor, and his/her family and relatives.

## G.   ENFORCEMENT OF BREACH

It is recognized that damages in the event of breach by Financial Advisor of any representation, warranty or covenant made in this Agreement will be difficult if not impossible to ascertain. It is therefore agreed that CLS, in addition to, and without limiting any other remedy or right that it or the CLS Group might have, shall also have the right to:

   i. *Injunction.* An injunction against Financial Advisor issued by a court or arbitration panel of competent jurisdiction enjoining such breach, and Financial Advisor hereby consents to the issuance of any preliminary or permanent injunction without limitation and without bond; and

   ii. *Liquidated Damages.* The parties agree that in the event of a breach by Financial Advisor of any covenant contained in this Agreement, actual damages would difficult or impossible to ascertain, and that therefore, each single occurrence which may be considered a breach of any covenant contained in this Agreement shall require the imposition of a liquidated damage award in favor of CLS in the amount of $25,000 per violation, which the parties agree is not a penalty, and which represents a reasonable liquidated damage per violation.

   iii. *Specific Enforcement.* The right to have such covenants specifically enforced by any court having equity jurisdiction, it being acknowledged and agreed that any breach of any of such covenants will cause irreparable injury to CLS and that money damages will not provide an adequate remedy. Financial Advisor acknowledges and agrees that the covenants are reasonable and valid in geographical and temporal scope and in all other respects. If any court determines that any of such covenants, or any parts thereof, are invalid or unenforceable, the other provisions and the remainder of any of the covenants so impaired shall not thereby be affected and shall be given full effect, without regard to the invalid portions. If any court determines that any of the covenants, or any parts thereof, are unenforceable

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200   Toll Free: 1-888-99-CABOT (22268)


ver08-01-12CLS

because of the duration or geographic scope thereof, such court shall have the power to reduce the duration or geographic scope, as the case may be, of such covenants and, in such reduced form, such covenants shall then be enforceable. If any court holds any of the covenants unenforceable by reason of its breadth of geographical scope or otherwise, it is the intention of the parties that such determination not bar or in any way affect CLS's right to the relief provided above or in the courts of any other jurisdiction as to breaches of any of such covenants in such other jurisdictions, each of the covenants as they relate to each jurisdiction being severable into diverse and independent covenants.

iv. ***Return of records information and property.*** In the event Financial Advisor breaches any of the covenants relating to Account Documents, and other records, information, data, software and property, Financial Advisor consents to the issuance of an order by a court or arbitration panel of competent jurisdiction that Financial Advisor immediately return to CLS all CLS's Account Documents, records, information, data, software and property whether original, duplicated, computerized, handwritten or in any other form whatsoever, and that Financial Advisor be enjoined and restrained from using or disclosing any information contained in such records.

**Other Remedies.** Nothing contained in subsections G(i), G(ii), G(iii) and/or G(iv) shall be construed as exclusive or as prohibiting CLS or other members of the CLS Group from pursuing any other remedies available for such breach or threatened breach or for the breach of any other provisions of this Agreement.

**Tolling Provision.** All provisions in this Agreement requiring Financial Advisor to do or to refrain from certain activities shall be tolled for so long as Financial Advisor is in violation of the covenants set forth in Section F of this Agreement.

**Survival.** The representations, warranties and covenants made by Financial Advisor, and CLS's rights with respect to said representations, warranties and covenants shall survive the termination of this Agreement.

### H. COMPLIANCE

i. **Law, Rules, and Regulations.** In connection with all of Financial Advisor's activities hereunder, Financial Advisor hereby agrees that he/she shall comply with the Securities Act of 1933 ("the Act"), the Securities Exchange Act of 1934 ("the Exchange Act") and the Investment Advisers Act of 1940 (the "Advisers Act") and all regulations promulgated thereunder, as well as any applicable laws and regulations of FINRA, the SEC, and any state where Securities and Insurance products will be offered for sale or purchase. Financial Advisor shall not make any statements, either verbal or written, regarding any Securities and/or Insurance product which are untrue or misleading, or which omit a material fact necessary in order to make the statements, in light of the circumstances under which they are made, not misleading. Financial Advisor may only solicit and execute Securities and Insurance transactions for products as defined by the Financial Advisor's registration, licensing and appointments and as otherwise restricted by the provisions hereof. Financial Advisor shall not make sales of any Securities or Insurance products in any state unless both CLS and Financial Advisor are licensed and registered as a broker/dealer and agent to conduct the business described in this Agreement, as the case may be, or are exempt from such licensing and registration requirements in the opinion of counsel for Cabot Lodge. CLS expressly reserves the right to withdraw its license in any state at any time.

ii. **Written Supervisory Manual.** Financial Advisor acknowledges receipt of CLS's Written Supervisory Manual ("WSPs" or "Compliance Manual"). Financial Advisor shall study, implement and adhere to the procedures and standards set forth in CLS's Compliance Manual, including any periodic amendments to said WSPs. Financial Advisor acknowledges to have read said WSPs prior to selling any Securities and/or Insurance product to any client. Further, Financial Advisor shall submit to and fully cooperate with an annual or other compliance review by a CLS Compliance Officer and make available all of Financial Advisor's records, transactions, procedures, files and any and all other evidence of performance to ensure

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200 Toll Free: 1-888-99-CABOT (22268)


ver08-01-12CLS

compliance with CLS's Compliance Manual.

iii. **Notification.** Financial Advisor agrees to advise CLS immediately of any legal, regulatory or administrative action instituted or taken against him/her by any person, organization, regulatory body or court, excepting minor traffic offenses. Financial Advisor further agrees to advise CLS immediately of any facts or circumstances that could result in any legal or administrative action instituted or taken against him/her by any person, organization, regulatory body or court, excepting minor traffic offenses, as Financial Advisor becomes aware of said facts or circumstances.

iv. **Approved Products.** Financial Advisor agrees to solicit, sell or accept applications or orders for only those Securities and Insurance products and services approved by CLS.

v. **Dual Licensure Prohibited.** Financial Advisor agrees that he/she shall engage in the purchase and sale of any and all securities (the "Securities") exclusively through CLS and will not be associated with any other broker or dealer for the sale of securities, unless otherwise approved in writing by CLS.

vi. **Regulation S-P.** Financial Advisor acknowledges and agrees that he/she has read and fully understands Regulation S-P of the United States Securities and Exchange Commission ("SEC"), 17 C.F.R. § 248 *et seq.*, and that he/she will not disclose any nonpublic personal information of any client to any nonaffiliated third party without proper notice to said client which allows the client a reasonable opportunity to opt out of any such disclosure.

vii. **CLS's Privacy Policy.** Financial Advisor acknowledges and agrees that he/she has read CLS's Privacy Policy, a copy of which has is attached hereto as Exhibit "E" and incorporated herein by reference, and that he/she agrees to fully comply with all provisions of CLS's Privacy Policy.

I. **BROKER DEALER MATTERS.**

i. **Bank Accounts.** Financial Advisor agrees that he/she will not open any bank account in the name of CLS or have a right to authorize any other commitments on behalf or CLS or its parent company, or any of its subsidiaries or affiliates.

ii. **Non-Exclusive Territory.** Financial Advisor represents, warrants, and acknowledges that Financial Advisor is not granted the exclusive right to perform sales for CLS and that other persons may be contracted with by CLS to perform the same services in the same geographic location as Financial Advisor.

iii. **CLS's Names and Marks.** Financial Advisor acknowledges that ownership of all right, title and interest in and to the names "Cabot Lodge Securities, LLC", "Cabot Lodge Lodge", "CL Wealth Management" and all names, trade names, trademarks and service marks of CLS are and shall be vested solely in CLS and its affiliates, and Financial Advisor disclaims any right or interest therein or the goodwill derived therefrom. Financial Advisor covenants and agrees that Financial Advisor shall not use or file any Certificate of Assumed Name, Registration of Name, Reservation of Name, or any amendment or modification thereof, with any governmental authority pertained to the use or authority to use CLS's name or any trade name, trademark or service mark of CLS and its affiliates. Financial Advisor hereby authorizes and appoints CLS as its lawful attorney in fact to complete, execute and file with any governmental authority such cancellations, terminations and modifications of use of CLS's name, trade names, trademarks and service marks, and to complete, execute and file such other documents as may be necessary or convenient to cancel, terminate or modify any consent given by CLS to Financial Advisor for the use of CLS's name, any trade name, trademark or service mark.

iv. **Records/Trade Secrets.** Financial Advisor acknowledges and agrees that all Account Documents and all memoranda, notes, records, statements, reports, and documents of every kind, including but

Page 9 of 20



not limited to any information or materials related to any investment due diligence, in any form made available to Financial Advisor concerning CLS's Accounts, customers or customer accounts, or concerning CLS's internal operations and procedures, are confidential business records and trade secrets of CLS and are the sole property of CLS, regardless of whether such documents were created by CLS, Financial Advisor or affiliate of CLS, or by other employee, contractor or consultant of CLS and its affiliates (the "Records"). Such Records shall be maintained in the strictest confidence in compliance with the requirements of Regulation S-P, shall not be shared with any person outside of CLS, and shall not leave the premises of CLS. Upon Financial Advisor's termination, whether voluntary or involuntary, with or without Cause, or at such other time as CLS may request, Financial Advisor shall immediately relinquish possession to CLS of the originals of all such Records. Financial Advisor agrees that he/she will not at any time assert or claim an ownership interest or property interest in the originals of such Records.

    v.    **Survival.** CLS's rights in this Section I and all subsections thereof, related to its marks and trade secrets, without limitation, shall survive the termination of this Agreement.

## J. TERM AND TERMINATION

This Agreement may be terminated by CLS at any time for any or no reason immediately upon delivery to Financial Advisor of written notice of such termination.

## K. CLS'S RIGHT TO INFORMATION

**Financial Advisor Background.** Financial Advisor agrees that he/she shall furnish to CLS such information about him/herself, including, but not limited to, information relating to his/her prior business experience, educational background and reputation in the community, as may be requested by CLS for the purpose of complying with federal, state and FINRA requirements or for such other purposes as CLS may deem necessary. Financial Advisor further agrees that all such information furnished by him/her shall be true and complete and kept current at all times. Financial Advisor also agrees that failure to supply such information or the submission of information which contains any untrue statement of a material fact or which omits a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, shall constitute a breach of this Agreement.

**Credit Check Authorization.** Financial Advisor hereby authorizes CLS to conduct whatever credit checks or checks of Financial Advisor's finances and obtain information related to such checks as CLS may deem necessary.

**Background Check Authorization.** Financial Advisor hereby authorizes CLS to conduct whatever background checks, including but not limited to criminal records, civil actions filed against Financial Advisor, etc., and obtain information related to such checks as CLS may deem necessary.

## L. OBLIGATIONS WITH RESPECT TO ADVANCES

CLS may, but shall not be obligated to, advance Financial Advisor monies as a draw against commissions, or otherwise (and the total of same which has not been recouped by CLS shall constitute "Advances"). To the extent CLS makes any such Advances, Financial Advisor hereby promises to repay all Advances to CLS upon demand. Financial advisor expressly acknowledges, and hereby agrees that CLS shall have full discretion to apply advances as an offset or adjustment in the calculation of Financial Advisor's earned commissions.

In the event CLS demands repayment of any Advances, and Financial Advisor has not repaid same within ten (10) days of demand, interest shall accrue on the unpaid balance of all Advances at the higher of (i) three percent (3%) above the "Prime Rate" as published from time to time in the Wall Street Journal, per annum; and (ii) nine percent (9%) per annum.

Page 10 of 20

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)

ver06-01-12CLS

All Advances shall immediately become due and payable without presentment, demand, protest, notice of default or other notice of any kind, which Financial Advisor hereby expressly waives, in the event (i) that Financial Advisor's involvement with CLS shall terminate, for any or no reason, and regardless if terminated by CLS or Financial Advisor, voluntarily or involuntarily, except only in the event of the death or permanent disability of Financial Advisor; (ii) that CLS determines that Financial Advisor has breached any of the representation, warranties or covenants made by Financial Advisor to CLS in this Agreement; and/or (iii) that CLS determines that Financial Advisor has not obtained and/or maintained in full force and effect all licenses and registrations from the Financial Industry Regulatory Authority, securities exchange, state securities commissions, state insurance commissions and other regulatory bodies as necessary or appropriate in order for the Broker to conduct securities transactions or otherwise perform Financial Advisor's Company Duties; (iv) that Financial Advisor files a voluntary, or has filed against him/her an involuntary, petition under any provision of any Federal or state bankruptcy, insolvency, reorganization or similar laws; or if a receiver has been appointed to manage Financial Advisor's assets or property; or if Financial Advisor has made an assignment for the benefits of creditors; or if an entry of judgment or lien or issuance of a warrant or an order of attachment or garnishment has been made against Financial Advisor's property; or in the event of the commencement of any proceeding or procedure for enforcement of a money judgment has been brought by any person against Financial Advisor.

Financial Advisor hereby agrees to pay any and all costs and expenses, including without limitation, reasonable attorney's fees and disbursements, incurred by CLS in connection with the enforcement of any and all provisions of this Section M, and with regard to any defenses or counterclaims brought in the action to enforce collection of any Advances.

Presentment for payment, demand, protest and notice of demand, protest and nonpayment are hereby waived by Financial Advisor. No failure to demand or accelerate Financial Advisor's indebtedness of any Advances by reason of default hereunder, acceptance of a past-due installment or other indulgences granted from time to time, shall be construed as a novation of Financial Advisor's obligations under this Section M, or as a waiver of CLS's right of acceleration or right of CLS thereafter to insist upon strict compliance with the terms of this Section M or to prevent the exercise of such rights or any other right granted to CLS hereunder or by applicable laws. Unless otherwise specifically agreed by CLS in writing, Financial Advisor's liability for payment of any Advances, or any portion thereof, shall not be affected by (i) any extension of the time for payment of the Advances or any amount due in respect thereof, (ii) the release of all or any part of any collateral hereafter securing the payment of the Advances or any portion thereof, or (iii) the release of or resort to any person now or hereafter liable for payment of the Advances or any portion thereof. Financial Advisor hereby waives (i) all benefits of any law exempting his/her property, or any part of it, from attachment, garnishment, or execution, and (ii) trial by jury and the right to interpose any defense, set-off or counterclaim of any nature or description in any arbitration arising out of or relating to repayment or collection of the Advances.

## M. INDEMNIFICATION

Upon notice of a Claim (as hereinafter defined), Financial Advisor agrees to immediately indemnify, defend, and hold CLS and/or the other members of the CLS Group harmless against any and all claims and all losses, insurance deductibles, retentions, reasonable attorneys fees, and costs related to such Claims including, without limitation, any and all investigations, regulatory actions, regulatory inquiries, OTRs, Wells Letters, investigations, and litigation including, without limitation, discovery, mediations, arbitrations, court actions, depositions, motions, and appellate courts. CLS has the right to setoff any compensation earned by Financial Advisor through CLS for defense costs, indemnity, losses, costs and expenses arising out of any Claims. Further, if a lawsuit, arbitration, regulatory inquiry, or regulatory action is commenced or threatened, which could be covered under CLS's right to be indemnified, CLS has the right, at its sole discretion, to withhold any or all of Financial Advisor's compensation earned hereunder and not yet paid to Financial Advisor to establish a reserve fund to be held by CLS to pay the anticipated and/or actual losses, claims, costs and/or expenses asserted against Financial Advisor and/or CLS and/or any other indemnified person.

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)


ver08-01-12CLS

A "Claim" shall mean and include, without limitation, a regulatory inquiry, regulatory action, demand, claim, arbitration, counterclaim or action against CLS and/or any other member of the CLS Group related to: (1) Financial Advisor's breach of any representation, warranty, covenant or obligation contained in this Agreement; (2) Financial Advisor's violation or claimed violation of any state or federal law; (3) Financial Advisor's violation or claimed violation of any rule or regulation of any state or federal regulatory body or self-regulatory organization such as FINRA; (4) Financial Advisor's violation or claimed violation of CLS's Compliance Manual; (5) errors or claimed errors committed by Financial Advisor; and (6) claims asserted against CLS by Financial Advisor's customers, contractors, or vendors that are based on Financial Advisor's alleged misconduct including, without limitation, as described in items (1) through (5) herein. A Claim includes such claims which arose as a result of acts or omissions which may have occurred before, during, or after the commencement or termination of this Agreement.

Any and all indemnified persons having a right to a defense hereunder shall have the immediate right of payment from Financial Advisor for costs and attorneys' fees related to his/her/its defense, and may seek an immediate award and payment through the legal and equitable powers of any court or arbitration panel at any time during the subject matter proceedings, and if an action or motion requesting relief under this paragraph is brought to enforce same, then claimant shall be entitled to an additional award for their reasonable attorneys fees and costs related to said motion.

Any and all indemnified persons having a right to a defense hereunder: (i) hereby reserve the absolute right to its choice of counsel at all times; and (ii) may, at its sole discretion, settle any litigation, claim, or regulatory matter without the consent of the Financial Advisor and without prejudicing CLS's rights to indemnification and defense contained herein

CLS's and the CLS Group's rights in this section related to defense and indemnification contained herein shall survive the termination of this Agreement. The parties hereto agree that each member of the CLS Group is a third party beneficiary of this Agreement.

### N. MISCELLANEOUS OBLIGATIONS AND RIGHTS OF THE PARTIES

a. **Integration.** This Agreement supersedes all previous agreements between CLS and Financial Advisor as to the subject matter contained herein. All such previous agreements are null and void. No representation, promise, inducement or statement has been made by or on behalf of either party hereto concerning the subject matter hereof which is not set forth in this Agreement, and no party has any right to rely on, and in fact does not rely on, any representation not expressly made in writing in this Agreement.

b. **Savings Clause.** If any provisions of the Agreement shall be deemed void, invalid or ineffective for any reason, the remainder of this Agreement shall remain in full force and effect.

c. **Written Amendment.** This Agreement may not be amended or modified except by written instrument executed by the parties hereto.

    d. **Non-FINRA Disputes.** Any claim or dispute between the parties that is not subject to arbitration before FINRA, including, but not limited to, any claim or dispute in connection with or arising under the terms of this Agreement or under any federal, state or local labor, employment, discrimination, compensation, wage payment or wage-hour law, statute, regulation or ordinance, shall be venued solely in the United States District Court or state court of general jurisdiction nearest to and having venue over the CLS office in which Financial Advisor was situated or if no such office, then the New York City Office. To the fullest extent permitted by law, the parties further acknowledge and agree as follows: (i) the

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200   Toll Free: 1-888-99-CABOT (22268)

ver08-01-12CLS

  parties waive any right to a trial by a jury in connection with any Claim; (ii) to assure individualized adjudication, any Claim or other claim or dispute between the parties (including, without limitation, any claim subject to arbitration before FINRA) shall be prosecuted either in court or arbitration solely by Financial Advisor and CLS and not as a group, class or collective action or proceeding. In the event a group, class or collection action or proceeding is commenced in which a party hereto may be entitled to participate, that party shall decline to participate or opt-in to such action or proceeding and, to the extent permitted, shall opt-out of such action or proceeding and accept no relief or recovery therein; (iii) the limitation period for any Claim by or against CLS or Financial Advisor shall be the applicable limitation period if less than one year and shall be reduced to one year if the period otherwise would have been longer.

e. **Choice of Law.** Except as otherwise required hereunder, Financial Advisor agrees to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court that has original jurisdiction for the judicial district or county in which the CLS office to which Financial Advisor was last assigned or where CLS is headquartered. This agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction. Except as otherwise provided herein, this Agreement shall be construed and the validity, performance and enforcement thereof shall be governed by the laws of the State of Delaware, without regard to the choice of law provisions thereof.

f. **Notice.** Any notice to be given to CLS or CLS under this Agreement shall be addressed to CLS 44 Wall Street, Fourth Floor, New York, NY 10005 with a copy to Prime United Holdings, LLC, 44 Wall Street, New York, NY 10005 Attention: Jacob Frydman, Director; with a copy to the Executive Vice President of the Prime United Securities Division of CLS, addressed to his/her last known address as the same appears on CLS's records. Any notice to be given to Financial Advisor shall be addressed to Financial Advisor at his last known address as the same appears on CLS's records, or otherwise at the address provided on the first page of this Agreement.

g. **General Waiver.** The forbearance or neglect of CLS to terminate this Agreement as a result of the failure of Financial Advisor to comply with the provisions set out herein, or its failure to take advantage of its rights and privileges thereunder, shall not constitute a waiver of such rights and privileges.

h. **Limitation of Damages.** If Financial Advisor institutes an action against CLS or any other person comprising the CLS Group, Financial Advisor's damages shall be limited to only those commissions due at the date of the termination of this Agreement. Financial Advisor hereby waives any rights to and shall not be entitled to special damages, consequential damages, punitive damages, attorneys' fees, or future commissions irrespective of the basis of the claim or the type of damages sought.

i. **Attorneys' Fees.** Notwithstanding anything in this agreement to the contrary, if any legal action, arbitration or other proceeding is brought by CLS or any other person comprising the CLS Group, because of Financial Advisor's failure to abide by the terms of this Agreement, violation of state or federal law, or the violation of FINRA rules, CLS and/or or any other person comprising the CLS Group shall be entitled to recover reasonable attorneys' fees and other costs incurred in collecting sums owed or in prosecuting an action, claim or proceeding, or appeal in addition to any other relief to which they may be entitled through collection or enforcement.

j. **Execution in Counterparts.** This Agreement may be signed in counterparts by the Parties hereto with the same force and effect as if the above parties signed the same original agreement. Facsimiles, electronic .pdf(s) and photocopies of the Parties' signatures to this Agreement shall be valid and enforceable to the same extent as original signatures, and the parties hereby waive any requirement that original signatures be produced as a condition of proving the validity of or otherwise enforcing this Agreement.

k. **Personal services.** Financial Advisor's obligations under this Agreement shall not be assignable by Financial

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)

ver08-01-12CLS

Advisor, although the CLS shall have the right to freely assign this Agreement, with or without Financial Advisor's consent and without notice to Financial Advisor.

l. **Benefit.** This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and the CLS Group and their respective heirs, legal representatives, successors and permitted assigns. All fees, costs and expenses, including reasonable attorneys' fees, court costs and costs of appeal, incurred by the prevailing party in any such litigation, action, arbitration or proceeding shall be reimbursed by the non-prevailing party; provided, that if a party to any such litigation, action, arbitration or proceeding prevails in part, and loses in part, the court, arbitrator or other adjudicator presiding over such litigation, action, arbitration or proceeding shall award a reimbursement of the fees, costs and expenses incurred by such party on an equitable basis.

m. **Jurisdiction.** Financial Advisor agrees to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court that has original jurisdiction for the judicial district or county in which either Financial Advisor last worked for the CLS or where the CLS is headquartered. This agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

n. **Disqualification of Counsel.** Financial Advisor expressly agrees that during the term of Financial Advisor's involvement with the CLS, Financial Advisor may be represented by counsel for the CLS, and that such representation by the CLS's counsel shall not disqualify said counsel from acting as the CLS's counsel in any subsequent action that may be brought by the CLS against Financial Advisor, and Financial Advisor expressly waives any privilege and/or conflict with respect to such representation.

o. **Modification.** This Agreement may not be modified or amended except by a written agreement, signed by the party against whom enforcement is sought.

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)

ver08-01-12CLS

I HAVE READ AND REVIEWED THIS AGREEMENT, INCLUDING THE RESTRICTIVE COVENANTS CONTAINED HEREIN, IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

The following Exhibits are attached hereto and are incorporated herein by reference. By initialing below at each Exhibit I represent and warrant that I have read said Exhibit and certify each as true and correct and where required I have completed same and if an Exhibit which requires disclosure is left blank I have no disclosures to make. With respect to Exhibit "C" I have included thereon any disclosures which I am required to make hereunder, and with respect to Exhibit "D" I have included thereon all Prior Accounts which I intend to pursue pursuant to Section D II (iii).

Exhibit "A" –   Intentionally Deleted

Exhibit "B" –   Intentionally Deleted

Exhibit "C" –   Required Disclosures......................(Initial) _[initialed]_

Exhibit "D" –   Intentionally Deleted

Exhibit "E" –   CLS Privacy Policy........................(Initial) _[initialed]_

I HAVE RECEIVED AND HAVE/WILL READ CLS'S WSPS AND WILL COMPLY THEREWITH.........................................................................................................(Initial) _[initialed]_

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first written above.

FINANCIAL ADVISOR

_[signature]_

Print Name: Daniel S. Werts

CABOT LODGE SECURITIES, LLC

By: _____

Its: _____

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)

ver08-01-12CLS

## EXHIBIT A

### Intentionally Deleted

## EXHIBIT B

### Intentionally Deleted

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)

## EXHIBIT C

## ADDITIONAL REQUIRED DISCLOSURES

| ADDITIONAL REQUIRED DISCLOSURES |
|---|
| N/A |
| |

Financial Advisor makes the above disclosures in order to make the representations and warranties made to CLS in Section C of the Agreement true and correct, and/or not otherwise misleading.

If more than one page is used to list the Additional Required Disclosures please indicate number of additional pages and initial same.

Number of Additional Pages: 0     Initials: /N/

Page 17 of 20

Cabot Lodge Securities, LLC, Member FINRA, SIPC 
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200  Toll Free: 1-888-99-CABOT (22268)

ver06-01-12CLS

## EXHIBIT D

### Intentionally Deleted

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200   Toll Free: 1-888-99-CABOT (22268)

ver08-01-12CLS

## EXHIBIT E

## PRIVACY ADDENDUM



CABOT LODGE SECURITIES

## PRIVACY NOTICE

### Privacy Notice

### Our Commitment to Protecting Your Privacy

Cabot Lodge Securities, LLC ("CLS") realizes that you may be concerned about the confidentiality and security of the financial and personal information you have entrusted or will entrust with CLS in the normal course of conducting securities transactions and providing related investment services. CLS is committed to ensuring the confidentiality and security of your financial and personal information.

In furtherance thereof and to fully comply with Regulation S-P of the United States Securities and Exchange Commission regarding the use and disclosure of nonpublic personal information, CLS makes the following notification and pledge:

1. CLS collects nonpublic personal information about you from the following sources:

   a. Information CLS receives from you on applications or other forms;
   b. Information about your transactions with Cabot Lodge, its affiliates or others; and
   c. Information CLS receives from a consumer reporting agency.

2. CLS does not sell customer account/nonpublic personal information to anyone. CLS may disclose the following kinds of nonpublic personal information about you:

   a. Information CLS receives from you on applications or other forms such as your name, address, social security number, e-mail address, date of birth, gender, marital status, income, net worth, assets and/or driver's license number;
   b. Information about your transactions with Cabot Lodge, its affiliates, or others, such as your account balance, payment history, parties to transaction(s), credit usage, investment objectives and/or trade experience; and
   c. Information CLS receives from a consumer reporting agency about you, such as your creditworthiness and credit history.

3. CLS may disclose nonpublic personal information about you to the following types of third parties:

   a. Financial service providers, such as banks, securities broker/dealers, mutual fund companies, etc.,
   b. as necessary to complete specific transactions; and

---

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200   Toll Free: 1-888-99-CABOT (22268)



ver08-01-12CLS

  c. State and federal regulatory agencies, as required by law.

4. CLS restricts access to nonpublic personal information about you to only those Financial Advisors or representatives of CLS that need to know this information to provide products or services to you. CLS and its affiliates and representatives maintain physical, electronic and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

5. CLS's privacy policy is the same for current and former clients. If you choose to close your account with CLS, as part of the process of transferring your investments, CLS may—unless you instruct CLS otherwise as set forth below—disclose certain nonpublic personal information about you to the new broker/dealer or custodian you select. Upon leaving CLS as a client, unless you direct otherwise as set forth below, CLS may retain copies of your nonpublic personal information for the sole purpose of continuing to service your accounts. In such event, CLS is still required to keep your personal information confidential and secure and may only use it to service your account.

6. **IF YOU PREFER THAT CLS NOT DISCLOSE NONPUBLIC PERSONAL INFORMATION ABOUT YOU TO NONAFFILIATED THIRD PARTIES**, you may opt out of these disclosures, that is, you may direct us not to make those disclosures (other than disclosures otherwise permitted by applicable law). **If you wish to opt out of disclosures to nonaffiliated third parties, you may call the following toll-free number (888) 992-2268 or send an e-mail stating your desire to opt out to info@CLSecurities.com.** CLS will not disclose any nonpublic personal information within thirty (30) days of your receipt of this Notice.

If you have any questions or concerns about CLS's privacy policy or the accuracy of any nonpublic personal information about you collected by CLS, please contact CLS at (212) 388-6200 or toll-free at (888) 992-2268 or send an e-mail to info@CLSecurities.com

Cabot Lodge Securities, LLC, Member FINRA, SIPC
44 Wall Street, Suite 401, New York, NY 10005
Telephone: 212-388-6200   Toll Free: 1-888-99-CABOT (22268)

ver08-01-12CLS